# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LARRY GASTON,
    Plaintiff

vs

L.C. COVAL, et al.,
    Defendants

Case No. 1:03-cv-691

**REPORT AND RECOMMENDATION**
(Spiegel, J.; Hogan, M.J.)

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), brings this prisoner civil rights action under 42 U.S.C. § 1983. Defendants are Linda Coval, Assistant Chief Inspector of the Ohio Department of Rehabilitation and Correction (ODRC); Mona Parks, SOCF Health Care Administrator; James Goodman, SOCF Institutional Inspector; and Darlene Smith, ODRC Quality Assurance Manager. Plaintiff alleges claims of deliberate indifference to his serious medical needs and an excessive use of force in violation of his Eighth Amendment rights. This matter is before the Court on defendants' motion for summary judgment (Doc. 31), to which plaintiff has not responded.

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the

parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff's verified complaint (Doc. 2)[1] alleges that he suffers from a seizure disorder and that his medication was changed from 300 milligrams of Dilantin to 200 milligrams of Tegretol. On January 11, 2003, he suffered an epileptic seizure, fell, and injured his tongue, head and ribs.

---

[1] Plaintiff's verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(e). *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

2

Plaintiff states his condition was better controlled while he was taking Dilantin and that the change in his medication caused his seizure. He further alleges that the officers who responded to the seizure placed him in handcuffs and legcuffs while he was having the seizure. He alleges the officers were not properly trained in dealing with persons having an epileptic seizure. Plaintiff alleges that the named defendants did not respond appropriately to his complaints about the January 2003 incident. Plaintiff seeks monetary relief.

In support of their motion for summary judgment, defendants present the following evidence. Plaintiff has a history of a seizure disorder and has participated in a chronic care clinic for his condition since July 2000. (Doc. 31, Exhs. B, C, L). Plaintiff has been treated with anti-seizure medication since 1997 when he entered prison. Until June 2000, plaintiff was treated with Dilantin. (Doc. 31, Exhs. C, D, L). In July 2000, his anti-seizure medication was changed to Tegretol. (Doc. 31, Exhs. C, D, L). Plaintiff continued to receive Tegretol until March 2003. (Doc. 31, Exh. E, L). Following a meeting with the SOCF Medical Director during which plaintiff expressed he did better with Dilantin, his medication was switched back to Dilantin. *Id.*

Defendants present evidence that on January 11, 2003, while a corrections officer was making a routine range check, he found plaintiff lying on his cell floor having a seizure. He called for his supervisor and for medical help. A gurney was sent to transport plaintiff to the infirmary. When the officers attempted to place plaintiff on the gurney, he began to flail about and struggle. As a result, for his safety and the safety of the officers, his hands were secured by handcuffs to the sides of the gurney and he was strapped down. He was then immediately transported to the infirmary. (Doc. 31, Exhs. K, L). Once he was in the infirmary, plaintiff was observed for about two hours for seizure activity. (Doc. 31, Exh. F). When it was determined that

he was stable, he was returned to his cell. A few days later, he was seen by the prison doctor regarding his seizures. He was seen again by the doctor two days later. From the time that he came to the infirmary and during the time that he was seen by the doctor, the only injury noted was that he had bitten his tongue during the seizure and it was bleeding. Throughout those few days, plaintiff did not complain about wrist pain from having been handcuffed. At the time of his discharge from the clinic, plaintiff's only complaint was that his legs felt a little tired. (Doc. 31, Exh. G).

On January 15, 2003, plaintiff filed an informal complaint with defendant Parks, questioning his medication change from Dilantin to Tegretol. Plaintiff also objected to the use of hand and leg restraints in response to his seizure. (Doc. 2, attachment). Defendant Parks advised him that his records showed he had been taking Tegretol for years and that cuffing is part of the security protocol. *Id.* Parks also noted his records showed an injury where he bit his tongue, but no other injuries. *Id.* On February 4, 2003, plaintiff filed a grievance with defendant Goodman and again questioned why his medication was changed from Dilantin to Tegretol. Plaintiff also complained about the handcuffing. (Doc. 31, Exh. H). Defendant Goodman checked plaintiff's medical file and determined the medication had been changed several years before. (Doc. 31, Exh. H). Because handcuffs were used, plaintiff was informed by defendant Goodman that a use of force committee would determine if the force used, in other words handcuffing him, was necessary. *Id.* Plaintiff appealed that disposition to defendant Coval who upheld the decision of the Institutional Inspector. (Doc. 31, Exh. I). In addition, defendant Coval referred plaintiff's grievance to the Office of Correctional Health Care. *Id.* Defendant Smith, the Quality Assurance Manager, concurred with the Chief Inspector's decision and advised plaintiff

to sign up for sick call if he feels his medications are not effective and to address any medical concerns with his doctor. (Doc. 31, Exh. J).

After an investigation, the use of force committee concluded that there was no use of force utilized in the incident and that the actions taken by corrections officers were necessary to protect plaintiff from injuring himself or staff members. (Doc. 31, Exh. K).

After incarceration, only the "unnecessary and wanton" infliction of pain constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Wilson v. Seizer*, 501 U.S. 294, 298 (1991), quoting *Whitley v. Albert*, 475 U.S. 312, 319 (1986). Unnecessary and wanton infliction of pain includes those conditions that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

In order to establish a claim for relief under 42 U.S.C. § 1983 for a denial of medical care, plaintiff must present evidence showing "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prisoner who is allowed to suffer needlessly through a denial of medical care when relief is available has a cause of action under the Eighth Amendment against an individual whose deliberate indifference caused the suffering. *Id*; *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). Such a claim has both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson*, 501 U.S. at 297-300.

The objective component requires that the deprivation alleged be "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834, quoting *Wilson*, 501 U.S. at 298. "[O]nly those

deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seizer*, 501 U.S. 294, 298 (1991), citing *Rhodes*, 452 U.S. at 347. *See also Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994).

Under the subjective component, plaintiff must establish that defendants acted with deliberate indifference to his serious medical needs, *Estelle*, 429 U.S. at 106; *see also Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302-303, which requires evidence that defendants ignored a known risk of harm. *Farmer*, 511 U.S. at 837, 842. A prison official may be held liable for denying an inmate humane conditions of confinement only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's health or safety before an Eighth Amendment violation will be found. *Id.* at 835. *See also Whitley*, 475 U.S. at 319. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. Applying these standards to the instant case, the Court concludes that plaintiff fails to establish his Eighth Amendment claim.

While it is undisputed that plaintiff suffered a seizure on January 11, 2003, it is also undisputed that his medication was changed several years prior to the incident. Therefore, there

is no causal connection between the change in his medication and his seizure on that date. In addition, there is no evidence that any of the named defendants were responsible for the change in plaintiff's medication from Dilantin to Tegretol, a decision necessarily made by the prescribing physician. In any event, plaintiff's disagreement with the doctor's medical judgment concerning the proper medication for his condition simply does not evidence deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Moreover, the evidence shows that plaintiff was promptly transported to the infirmary and treated for his seizure. He received appropriate treatment on the day in question and thereafter. There is simply no evidence that any of the named defendants were deliberately indifferent to plaintiff's medical needs in connection with the incident in question.

In addition, plaintiff has failed to establish an Eighth Amendment claim for an excessive use of force. To establish his excessive use of force claim, plaintiff must present evidence showing that the force used by prison officials was applied maliciously and sadistically to cause harm rather than in a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 501 U.S. 1, 7 (1992); *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995), *cert. denied*, 115 S.Ct. 2269 (1995); *Caldwell v. Moore*, 968 F.2d 595, 599-601 (6th Cir. 1992). In making this determination, a court must consider the reasons for the use of force, the type and amount of the force used, and the extent of the injury inflicted. *See Hudson*, 501 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 320-322 (1986); *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).

The evidence presented demonstrates that prison officials responded reasonably to the situation presented. At the time of his seizure, plaintiff was combative and posed a risk to himself and others. The restraints were used in a reasonable manner and not for the purpose of

7

punishment or causing harm. Nor is there evidence that plaintiff suffered any injury as a result of the restraints used. Finally, none of the named defendants were directly involved in restraining plaintiff. Therefore, plaintiff's Eighth Amendment claim excessive use of force claim is without merit.

To the extent plaintiff complains that the named defendants failed to properly handle and investigate his informal complaints and grievances, plaintiff's complaint fails to state a claim for relief for a denial of due process because plaintiff has no constitutional right to an effective grievance procedure. *See Argue v. Hofmeyer,* 80 Fed. Appx. 427, 430 (6th Cir. 2003) (unpublished), 2003 W.L. 22495834, **2-**3, citing *Hewitt v. Helms,* 459 U.S. 460, 467 (1983); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991). *See also Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335 (6th Cir. 2000) (unpublished), 2000 W.L. 799760, at *3 (no inherent constitutional right to an effective prison grievance procedure); *Flowers v. Tate,* (6th Cir. 1991) (unpublished), 1991 W.L. 22009, at *1 (allegations that defendant Ohio prison officials failed to take action on plaintiff's grievance did not give rise to a constitutional claim). Plaintiff's allegations are insufficient to amount to a claim of an interest in any underlying substantive right protected by the Fourteenth Amendment's Due Process Clause and must be dismissed.

For the foregoing reasons, plaintiff has failed to establish his constitutional claims in this matter and defendants are entitled to summary judgment as a matter of law. Accordingly, defendants' motion for summary judgment should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment be **GRANTED**.

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of the Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 2/23/05

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

9

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent  ☐ Addressee<br>B. Received by (Printed Name)   C. Date of Delivery |
| 1. Article Addressed to:<br><br>Larry Gaston #347-210<br>SOCF<br>P.O. Box 45699<br>Lucasville, OH 45699-0001 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered     ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number (Transfer from service label) | 7002 0860 0000 1410 1312 |

PS Form 3811, August 2001   Domestic Return Receipt   102595-02-M-1540

1:03 cv 691   doc. # 32